UNITED STATES, Appellee

v.

PATRICK A. TRANI, Private, U. S. Army, Appellant

1 USCMA 293, 3 CMR 27

No. 106

Decided April 9, 1952

CAPT. John R. Sennott, U. S. Army, for Appellant.
MAJ. Augustus A. Marchetti, U. S. Army, and 1ST. LT. Eugene L. Grimm, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused, Trani, was charged with willful disobedience of the lawful order of a superior officer, in violation of Article of War 64, 10 USC § 1536. The specification alleged that Trani disobeyed willfully the command of 2d Lt. Wetzel L. Bias, his superior officer, to perform close order drill. Upon trial by general court-martial held at Fort Campbell, Kentucky, on May 18, 1951, he was found guilty of the charge and specification and sentenced to dishonorable discharge, total ·forfeitures, and confinement at hard labor for 5 years. The convening authority reduced the period of confinement to 2 years, and suspended execution of the dishonorable discharge, but otherwise approved. The approved findings and sentence were affirmed by a board of review in the office of The Judge Advocate General, United States Army. The case is before this Court on petition granted on November 19, 1951, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b)(3), 50 USC § 654.

At the time of the offense alleged the accused was a prisoner in the post stockade, Fort Campbell, Kentucky, where his principal duty consisted of service as detail clerk in the yard office.· Lt. Bias was the Assistant Confinement Officer and Administrative Assistant to the Prison Officer. On the day before, or the morning of, the present offense it had been determined that petitioner had intentionally destroyed by burning certain prison records in

the stockade's yard office. For this misconduct the Prison Officer, a Capt. Carlisle, had assessed against him as punishment 4 hours of extra labor per day for 7 days. Lt. Bias testified that at or near the time this penalty was imposed, he recommended to the Prison Officer that petitioner be required to perform additional close order drill as a corrective for his apparent want of discipline and lack of self-control. Following receipt of this advice, Capt. Carlisle directed the accused to engage in close order drill during normal duty hours for prisoners until he "shaped up and got a little better discipline, better control of himself." The word "indefinitely" was included in the instruction to drill together with the reason therefor. On the morning of April 18, 1951, the accused was brought before Lt. Bias, who was informed that the former had refused to perform this duty when ordered to do so by Sgt. Johnson, the senior yard sergeant. Lt. Bias asked Trani if he realized the full implications of his conduct, and the latter replied merely, "I'm sorry, sir." Lt. Bias then asked if he was to be understood to refuse to perform close order drill and was answered in the affirmative. Thereafter the lieutenant told petitioner that he was then and there giving him a direct order to return to the yard and engage in drill, to which he received an identical expression of respectful regret. Finally in the presence of two non-commissioned officers and Capt. Carlisle, Lt. Bias repeated the order a third time and again "Trani definitely refused to return to the stockade and drill."

The testimony of the lieutenant was fully corroborated by two prosecution witnesses, Sgt. Pollock and Cpl. Lopez, each of whom testified that he was present when the order in question was given petitioner. Lt. Bias later testified that the drill ordered was not a part of the regular compound drill session in which all prisoners participate briefly each day, but instead was to be carried out additionally and during normal duty hours. He further stated particularly that the order given petitioner contemplated his engagement in close order drill while other prisoners were occupied in the performance of hard labor. As to duration it was said that although the order was advisedly indefinite, it was "up to the prisoner" to terminate the period by displaying "the proper drill and proper attitude." According to the lieutenant, the accused's attitude was not one of contempt or even disrespect. Quite politely he expressed his considered intention to disobey the order—and he did disobey it.

Appellate defense counsel contends that the board of review erred in affirming the findings and sentence of the court-martial on the following ground:

"That, since the assessment of an indefinite period of close order drill by a commanding officer as punishment for an offense is illegal, the order carrying such into execution is likewise illegal."

The elements of the offense charged in the case at bar are set out as follows in Manual for Courts-Martial, U. S. Army, 1949, paragraph 152b:

"(a) That the accused received a certain command from a certain officer as alleged; (b) that such officer was the superior officer of the accused; and (c) that the accused willfully disobeyed the command. A command of a superior officer is presumed to be a lawful command."

From the summary of facts offered in a preceding paragraph, it is apparent that the accused received an order to perform close order drill from an officer as alleged; that this person was petitioner's superior officer; and that Trani willfully disobeyed the command. These matters are not controverted. Consequently the sole question involved in the present case is whether the command of Lt. Bias was a lawful one. If it be determined that it was, then the conviction must be affirmed. On the other hand, should this Court reach a conclusion of illegality, then the opposite result must follow, in view of the following provision of the Manual for Courts-Martial, U. S. Army, 1949, paragraph 152b:

"The order must relate to military

**295**

duty and be one which the superior officer is authorized under the circumstances to give the accused.

. . . . . . .

"A person cannot be convicted under this article if the order was illegal; but an order requiring the performance of a military duty or act is presumed to be lawful and is disobeyed at the peril of the subordinate."

It is a familiar and long-standing principle of military law that the command of a superior officer ■ is clothed with a presumption of legality, and that the burden of establishing the converse devolves upon the defense. This rule is effectively stated in Winthrop, Military Law and Precedents, 2d ed, 1920, paragraph 888, as follows:

"The unlawfulness of the command must thus be a fact, and, in view of the general presumption of law in favor of the authority of military orders emanating from official superiors, the onus of establishing this fact will, in all cases—except where the order is palpably illegal on its face—devolve upon the defence, and clear and convincing evidence will be required to rebut the presumption."

Briefs of counsel in the instant case disclose fundamental disagreement on the question of whether ■ the close order drill directed here was assessed as training or as punishment. Petitioner contends that the order was not given as training, was wholly punitive in purpose and effect, and was, therefore, illegal. In support of this contention appellate defense counsel has cited United States v. Woods, 15 BR 163, and United States v. Sansone, 43 BR 241. On the other hand, the Government takes the position that the order given by Lt. Bias was not used for the purpose of punishing Trani, but to correct him—in truth, to train him in discipline and self-control—and was, therefore, an entirely lawful command. In view of the historic and eminently proper rule that military duties, including drills, shall not be degraded by imposing them as punishments, it is apparent that the

**296**

question of the lawfulness of the command in the instant case must depend on whether the order under scrutiny provided a penalty or training for the accused. The Manual for Courts-Martial, U. S. Army, 1949, paragraph 115, uses the following language in the present connection:

"Courts-martial will not impose any punishment not sanctioned by the custom of the service such as carrying a loaded knapsack, wearing irons, shaving the head, placarding, pillory, stocks, and tying up by the thumbs. Military duties such as guard duty, drills, and the sounding of calls will not be degraded by imposing them as punishments. Solitary confinement, a bread-and-water diet, loss of good conduct time, and the placing of a prisoner in irons will not be adjudged as punishments by a court-martial."

It should be borne in mind, of course, that the foregoing Manual provision has sole reference to the imposition of *punishment* by a court-martial, an agency which has no responsibility, or even power, to furnish training in the sense in which it is used by the Government here. It is to be expected that at least a certain amount of latitude in the exercise of discretion will be permitted commanding officers, including prison officials, in the handling of personnel and the assignment of duties thereto.

In light of the principles set out above, we shall now consider whether the order's alleged illegality has been established. At the outset it should be said that the command does not appear to us to be "palpably illegal on its face." The record discloses that the close order drill directed was in fact specifically characterized as training in discipline and self-control. Moreover, analysis of Lt. Bias' testimony has produced the conclusion that he genuinely regarded the exercise as legitimate training and not as punitive action. There is certainly nothing inherently improbable in his and other testimony to this latter effect, and no evidence was adduced to contradict it. It is recognized, of course, that were we to determine from

our consideration of the entire problem that the directed duty must as a matter of law be regarded as punishment, then the fact that it was described testimonially and otherwise as training, or even that it was genuinely intended as such, would be of no consequence. However, we cannot so conclude, with assurance, and consequently must not leave out of account in our consideration of the matter the explicit characterization of the duty and its apparently sincere interpretation as training.

Since it does not appear that the order was unlawful on its face, it remains to be seen whether it has been shown affirmatively to be illegal. We think it has not. It is clear that, had the drill involved been directed by court-martial sentence we would find no difficulty in viewing the exercise as punitive. Here, however, the officer directing it was authorized in appropriate cases to provide both training and punishment. It seems not at all unfair to say—given traditional attitudes and usages in the military establishments—that at first blush, at least, close order drill would be regarded as distinctly a training activity by service personnel generally. It is recognized, however, that this is not necessarily so—and our inquiry has to do with its nature in the setting of the present case. Our conclusion is that the activity directed in this case has not been shown to have been punishment, and, resultantly, that the order under scrutiny has not been shown affirmatively to be illegal. This view is based not only on the fact that the exercise was described as and honestly believed to be training by the personnel directing it, but also because it cannot be said that there is no necessary colorable relationship in purpose between close order drill, on the one hand, and, on the other, those qualities in which it was believed petitioner was deficient and whose inculcation and development were sought through the commanded exercise. Without difficulty we can imagine character and conduct deficiencies for which close order drill would be no specific. We are even willing to concede the possibility of shortcomings in the prescription here. How-

ever, it is not our function—remote from the problem as we are in time, place, and setting—to substitute our judgment for that reasonably exercised by an officer in command of personnel. We cannot say that it is unreasonable to believe that the development of qualities of discipline and self-control may be advanced through the use of close order drill. We cannot say that the accused had not manifested a want of these attributes. Moreover, we cannot say that it was not the function of the Prison Officer in this case to train as well as to administer punishment. And finally, we cannot say that he should not be permitted generous latitude in diagnosing ills and prescribing remedies. We are not convinced that defensible limits were exceeded here, without which conviction we are not permitted to find error on the part of the trial court and the board of review.

Certainly the presumption █ of legality of orders emanating from a superior officer is, and of necessity must be, a strong one, requiring for an adverse determination a clear showing of unlawfulness. In a general sense—as we view it—the scope of our review as to command action of this nature—as well as that of the court-martial and the board of review—is not essentially dissimilar to that obtaining in this Court in the case of prejudicial questions having to do with sufficiency of evidence. See United States v. McCrary (No. 4), 1 USCMA 1, 1 CMR 1, decided November 8, 1951; United States v. O'Neal (No. 25), 1 USCMA 138, 2 CMR 44, decided February 7, 1952. Or the admissibility of confessions. See United States v. Monge (No. 9), 1 USCMA 95, 2 CMR 1, decided January 8, 1952; United States v. Webb (No. 370), 1 USCMA 219, 2 CMR 125, decided March 13, 1952. Or proof of the corpus delicti. See United States v. Brooks (No. 18), 1 USCMA 88, 1 CMR 88, decided December 28, 1951, 1 CMR 88; United States v. Uchihara (No. 60), 1 USCMA 123, 2 CMR 29, decided February 4, 1952.

Necessarily cases of the nature before us now—as do those in the areas mentioned in the preceding paragraph

—turn largely on their own facts. For this reason we believe that the Sansone and Woods cases, supra, are distinguishable and do not guide us in a direction other than the one we have chosen.

It has been suggested that, although close order drill might conceivably be regarded as training in a roughly similar setting, that directed here was so excessive in form as to be unreasonable and thus to reach the level of punishment. We cannot accept this argument. Although the prescription of duty was indefinite in duration, the record reflects that its execution was limited to normal duty hours. Thus while the accused was engaged in drill other prisoners were occupied in the performance of hard labor. Moreover, it appears explicitly that it lay well in petitioner's power to terminate the assignment by a manifestation of its effectiveness, by demonstrating that he had "shaped up."

It is pointed out finally that our action in this case is in no sense to be interpreted as a condonation of the punitive use of close order drill under the doubtful label of training. Were it to appear in a proper case that this exercise, or the performance of any other military duty, fairly appeared to be imposed as punishment, this Court would not hesitate to characterize its command basis as unlawful.

It follows from what has been said that the decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.