EFFRON, Judge
(concurring):
I concur in the majority opinion. I write separately to address a number of issues identified in the course of considering the present case that may bear on future litigation concerning the legality of orders.
I. Application of the Political Question Doctrine
A
According to appellant, the prosecution failed to prove that he had received a lawful order because the order was in furtherance of actions which he viewed as illegal — the deployment of American troops to the Republic of Macedonia and the development of command and control functions and associated uniform requirements. As noted in the *110 majority opinion, these matters were properly resolved by the military judge under the Supreme Court’s political question doctrine. See Gilligan v. Morgan, 413 U.S. 1, 6-12, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973).
The political question doctrine serves a particularly important function in military trials by ensuring that courts-martial do not become a vehicle for altering the traditional relationship between the armed forces and the civilian policymaking branches of government. Since the days of George Washington, America has demonstrated that military professionalism is compatible with civilian control of the armed forces. With few exceptions, American military personnel have been faithful to the concept that once their advice has been tendered and considered, they are duty-bound to implement whatever policy decisions the civilian leadership may make.
Appellant would have us change the nature of that relationship by requiring courts-martial to adjudicate the relationships between Congress and the President regarding the deployment of military forces. Consider, for example, the implications of appellant’s approach in the context of the Korean conflict, where adversity in frozen fields far from home intensified a bitter national debate over the propriety of U.S. participation in an undeclared war conducted under the United Nations’ auspices. Under appellant’s approach, courts-martial would have been authorized to adjudicate the relationships between Congress and the President, potentially permitting members of the armed forces to disobey unpopular orders. There is nothing in the more than 2 centuries of our history as a Nation that suggests courts-martial should be empowered to rule on the propriety of deployment orders as a matter of either constitutional or military law.
B
Appellant not only insists that courts-martial should rule on the legality of deployment orders, but he also contends that the military judge should submit the issue of legality to the members as an essential element of the offense. Such an approach would be even more problematic than permitting judges to adjudicate the legality of deployments because dispositions by members would produce unreviewable decisions. See Art. 63, UCMJ, 10 USC § 863 (an acquittal is final and unreviewable). Rather than producing the unity and cohesion that is critical to military operations, appellant’s approach could produce a patchwork quilt of decisions, with some courts-martial determining that orders were legal and others determining that the same orders were illegal, without the opportunity for centralized legal review that is available for all other issues of law.
C
It is apparent that appellant has carefully considered the legality of the orders at issue and that he has formed sincere, deeply held views about the legal basis for the deployment of his unit and the related matters of command and control and uniform arrangements. Congress has provided him with a variety of means to communicate his views to his superiors and national policy makers. He may challenge policy through a complaint under Article 138, UCMJ, 10 USC § 938; he may raise his concerns to the Inspector General of the Department of Defense, 5 USC Appendix; and he may communicate directly with Members of Congress and Inspectors General without interference from his military superiors and with protections against reprisal, 10 USC § 1034. The record indicates that he has exercised his right to communicate with Members of Congress. Although Congress has acted from time to time to limit deployments, regulate command and control arrangements, and specify uniform requirements, it has not done so with respect to the issues raised by appellant. Congressional inaction does not entitle him to address such issues through disobedience and then seek the protection of a court-martial, at least to the extent that the issues of concern to him involve political questions committed to the policymaking branches of government rather than rights granted to him by the Constitution, statutes, or regulations.
D
It is important to emphasize that the political question doctrine may not be used as an *111 excuse for avoiding issues committed by law to the court-martial process. The political question doctrine in a disobedience case arises in a context very different from civil litigation. In the typical civil case, a party initiates litigation as a means of interjecting the courts into a dispute between the two policymaking branches of government. In a court-martial for disobedience, the Government — not the accused — has initiated the litigation. Reliance on the political question doctrine in such circumstances is appropriate only when the legal principles at issue are directed at the allocation of responsibilities between the two policymaking branches of the government. Where the legal principles are directed at the rights and responsibilities of servicemembers, the political question doctrine may not be used to avoid addressing the legality of orders invoking those principles, even if those questions touch upon the responsibilities of the policymaking branches. Cf. United States v. Caceres, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979) (distinguishing between those rules designed to protect the rights of citizens and those designed to affect the management of governmental functions).
Military courts have long considered the legality of orders in cases in which an accused was directed to commit a crime or in which the purported order violated a legal standard designed to preclude commanders from abusing the fundamental rights of their subordinates or directing their subordinates to engage in criminal activities. Likewise, military courts traditionally have permitted servicemembers to defend against other charges by asserting obedience to lawful orders. Nothing in today’s opinion should be viewed as permitting a military judge to avoid ruling on the legality of an order in such a case simply because the issue bears certain attributes of a political question.
II. The Tension Between Prompt Obedience and Challenges to the Lawfulness of Orders
A
The Supreme Court has emphasized that “it is the primary business of armies and navies to fight or be ready to fight wars should the occasion arise.” United States ex rel. Toth v. Quarles, 350 U.S. 11, 17, 76 S.Ct. 1, 100 L.Ed. 8 (1955). To persevere and prevail amidst the danger, death, destruction, and chaos of armed combat, military personnel must develop the disciplined habit of prompt obedience to the directives of their superiors.
Although modern military practices typically foster opportunities for discussion before a decision is made, prompt obedience is expected once an order is given. The Supreme Court has observed that “[a]n Army is not a deliberative body. It is the executive arm. Its law is that of obedience. No question can be left open as to the right to command in the officer, or the duty of obedience in the soldier.” Parker v. Levy, 417 U.S. 733, 744, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), quoting U.S. v. Grimley, 137 U.S. 147, 153, 11 S.Ct. 54, 34 L.Ed. 636 (1890). “[T]o accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps.” Goldman v. Weinberger, 475 U.S. 503, 507, 106 S.Ct. 1310, 89 L.Ed.2d 478 (1986) (emphasis added).
Although the law expects prompt and instinctive implementation of orders, it does not envision unquestioning obedience. Only “lawful” orders must be obeyed. Art. 92; see RCM 916(d), Manual for Courts-Martial, United States (1998 ed.). There has always been an uneasy tension between the concept of “instinctive obedience” and the expectation that servicemembers will not obey unlawful orders. The present case has brought to light several issues growing out of that tension that may warrant further attention.
First, should the Manual for Courts-Martial provide more detailed guidance as to the appropriate means by which the legality of an order should be raised and adjudicated in a court-martial? Should it be through a motion to dismiss for failure to state an offense on the ground that the illegality deprives the directive of its status as an “order”? Should it be recast as an affirmative defense? Should both approaches be available?
It is noteworthy that the legality of an order is treated as a defense when it is *112 raised in the context of crimes other than disobedience offenses — for example, assault or homicide. See RCM 916(d). In one of our earliest cases, United States v. Trani, 1 USCMA 293, 3 CMR 27 (1952), we considered the procedure for assessing the legality of an order in a disobedience case. We observed that
[i]t is a familiar and long-standing principle of military law that the command of a superior officer is clothed with a presumption of legality, and that the burden of establishing the converse devolves upon the defense.
1 USCMA at 296, 3 CMR at 30 (citing W. Winthrop, Military Law and Precedents 575-76 (2d ed.1920 Reprint)). After noting that “it does not appear that the order was unlawful on its face,” we commented that “it remains to be seen whether it has been shown affirmatively to be illegal.” 1 USC-MA at 297, 3 CMR at 31 (emphasis added). Trani has never been overruled or distinguished. It could be viewed as consistent with either an affirmative defense approach or an approach based upon failure to state an offense.
Second, what circumstances should be encompassed by the terms “lawful,” “unlawful,” and “illegal” as applied to offenses involving obedience or disobedience of orders? Paragraph 415, Manual for Courts-Martial, United States, 1917, at 210, sets this high standard:
To justify from a military point of view a military inferior in disobeying the order of a superior, the order must be one requiring something to be done which is palpably a breach of law and a crime or an injury to a third person, or is of a serious character (not involving unimportant consequences only) and if done would not be susceptible of being righted.
Subsequent editions of the Manual streamlined this language, relying instead on descriptions of various types of orders within or outside the statute. See para. 134&, Manual for Courts-Martial, U.S. Army, 1928; para. 152&, Manual for Courts-Martial, U.S. Army, 1949; para. 169&, Manual for Courts-Martial, United States, 1951; para. 169&, Manual for Courts-Martial, United States, 1969 (Revised edition); para. 14c(2)(a), Part IV, Manual, supra (1998 ed.). The current guidance, however, does not address what types of deficiencies affect the validity of an order in the context of a disobedience offense. Aside from matters involving the political question doctrine, what other questions should be excluded from or included in the concept of lawfulness as it pertains to orders?
Third, are other changes warranted as a result of the manner by which the complexity and scope of modern military operations have significantly altered the nature of military life? The 19th century model, in which military personnel were directed primarily by personal orders from an immediate superior, has been transformed by the 21st century reality into an environment governed by thousands of pages of directives, regulations, standard operating procedures, and policy manuals issued by a variety of military and civilian authorities at service, joint, and international command levels. Under what circumstances should a servicemember be permitted to rely on one of these issuances to disobey a direct command from a superior?
It is well established that a servicemember may defend against a disobedience charge by demonstrating that compliance with the order would constitute a crime or would violate a standard of law intended to protect significant rights of the servicemember or a third party. Should an order be treated as not “lawful” if it is inconsistent with another issuance, even if that issuance addresses only routine administrative matters? If not, under what circumstances should a service-member who alleges reasonable reliance on the administrative issuance be permitted to raise a defense of mistake of fact or mistake of law?
Fourth, how should the burden of demonstrating the legality or illegality of an order be allocated? Do the references in the Manual and case law to a “presumption” or “inference” of legality suggest that the production of any information to the contrary negates the presumption and places the burden on the prosecution to prove the legality of the order? Alternatively, in the context *113 of an issue of law, should the presumption or inference simply mean that the issue of legality does not arise until raised by some information presented to the military judge in an appropriate motion and that, once presented, the military judge considers the issue de novo like many other issues of law?
Fifth, should the relative responsibilities of the military judge and the members of the court-martial panel be revisited? As noted above, the present Manual (2000 ed.) provides some guidance in paragraph 14c(2)(a), Part IV, on which types of orders may be considered lawful or unlawful, but provides no guidance on the allocation of duties within the court-martial itself.
RCM 801(e), governing the power of the military judge to rule finally on interlocutory questions and questions of law, provides the following general guidance: first, any ruling on a question of law or interlocutory question is final — RCM 801(e)(1)(A); and second, the military judge decides questions of fact within an interlocutory question under a preponderance-of-the-evidence standard — RCM 801(e)(4). The text of the rule does not address the legality of orders. The nonbinding Discussion accompanying RCM 801(e)(5) briefly notes that “the legality of an act is normally a question of law. For example, the legality of an order when disobedience of an order is charged ... normally [is a] question[ ] of law.” In short, the Rule is silent and the Discussion contemplates no role for the court members. Regardless whether it is an issue of law or an issue of fact, the Discussion contemplates that the matter will be resolved by the military judge.
The Military Judges’ Benchbook, however, takes a different approach. The non-binding model instructions for Article 92 offenses provide:
When it is clear as a matter of law that the order was lawful, this should be resolved as an interlocutory question----
If there is a factual dispute as to whether or not the order was lawful, that dispute must be resolved by the members in connection with their determination of guilt or innocence....
If the military judge determines, as a matter of law, that the order was not lawful, [the judge] should dismiss the affected specification----
Para. 3-29, Military Judges’ Benchbook at 3-59 (Dept. of the Army Pamphlet 27-9 (Oct. 1986)). This guidance appears to be inconsistent with RCM 801(e). If the question of lawfulness should continue to be treated as an interlocutory question or a question of law, then under RCM 801(e), it is the responsibility of the military judge — not the members — -to decide questions of law and any questions of fact arising thereunder.
The Benchbook, however, clearly reflects a degree of discomfort with the removal of any role for the members in such a case beyond determining whether the order was, in fact, issued and received. Although there have been lower court opinions rejecting defense challenges to the adequacy of instructions following the Benchbook approach, e.g., United States v. Tiggs, 40 CMR 352 (ABR 1968), pet. denied, 18 USCMA 630, 39 CMR 293, (1969), it does not appear that any cases have addressed the relationship between the Manual and the Benchbook in terms of the roles of the members and the military judge.
In contrast to the Manual’s focus on the military judge as the decision maker on the issue of legality in disobedience cases, the Manual contemplates a role, albeit somewhat limited, for the members in considering the legality of an order when raised as a defense to another crime. RCM 916(d), which governs the defense of obedience to orders, provides:
It is a defense to any offense that the accused was acting pursuant to orders unless the accused knew the orders to be unlawful or a person of ordinary sense and understanding would have known the orders to be unlawful.
The prosecution has “the burden of proving beyond a reasonable doubt that the defense” of obedience to orders “did not exist.” RCM 916(b). The military judge decides as *114 a matter of law whether the order raised by the defense was lawful. If so, the defense of justification applies and the charge is dismissed. See ROM 916(c). If the military judge rules that the order was unlawful, the judge so instructs the members and the members then decide whether the prosecution has proved beyond a reasonable doubt that the accused actually knew that the order was unlawful or that a person of ordinary sense would have known that the order was unlawful. See United States v. Calley, 22 USCMA 534, 541-42, 48 CMR 19, 26-27 (1973).
In view of the role given to the members in assessing the reasonableness of a service-member’s interpretation of the legality of an order when raised as a defense, should they be given a similar role under the Manual in assessing legality in a disobedience case? If so, what role should they be given? Should the guidance in the Benchbook be given stature in the Manual? If so, how should it be reconciled with RCM 801(b), under which the factual components of an interlocutory issue are resolved by the military judge, not the members?
Underlying these concerns is the question of which issues involving the legality of an order call for the expertise that a blue ribbon court-martial panel brings to the process and which call for the expertise that a military judge brings to the process. As our men and women in uniform are increasingly deployed to serve as peacekeepers and peace enforcers in challenging circumstances in which traditional rules of engagement are difficult to employ, it is quite possible that these questions will arise in a real, rather than theoretical, situation. It is an area in which a fresh review and possible modification of the guidance in the Manual could be most helpful. To the extent that this guidance would involve procedural matters, the President has the authority to establish authoritative rules in the Manual under Article 36, UCMJ, 10 USC § 836. To the extent that such guidance would involve interpretation of substantive offenses, it would be binding to the extent that it provided rights greater than those available under the statute. In any case, such guidance would be given considerable deference.
Although the temptation often is great— with good justification- — to allow the law to develop through the process of litigating specific cases, this is an area in which many weighty questions affecting the fundamental rights and obligations of servicemembers remain unanswered. In that context, a serious effort to address the questions concerning the pi'oeess of adjudicating the legality of orders would appear to be in the best interest of our Nation and our men and women in uniform.