*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
DALY, KISOR, and de GROOT
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Ramaje T. A. PARKS**
Aviation Ordnanceman Airman Apprentice (E-2), U.S. Navy
*Appellant*

**No. 202300243**

_____

Decided: 27 June 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Donald R. Ostrom (arraignment and motions)
D. Monique Brown (trial)

Sentence adjudged 8 July 2023 by a general court-martial tried at Naval Station, Norfolk, Virginia, consisting of officer and enlisted members. Sentence in the Entry of Judgment: no punishment.

For Appellant:
*Lieutenant Jesse B. Neumann, JAGC, USN*

For Appellee:
*Lieutenant K. Matthew Parker, JAGC, USN*
*Major Mary Claire Finnen, USMC*

Chief Judge DALY delivered the opinion of the Court, in which Senior Judge KISOR and Judge de GROOT joined.

_____

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

_____

DALY, Chief Judge:

Appellant was convicted, contrary to his pleas, of one specification of breach of restriction and one specification of willfully disobeying a superior commissioned officer, in violation of Articles 87b and 90, Uniform Code of Military Justice (UCMJ) respectively.[1]

Appellant asserts four assignments of error (AOEs): (1) whether the evidence is legally sufficient to support Appellant's conviction for breach of restriction; (2) whether the evidence is legally sufficient to support Appellant's conviction for willfully disobeying a superior commissioned officer; (3) whether Appellant's conviction is legally sufficient when the order Appellant allegedly violated was never determined to be lawful by the military judge; (4) whether Appellant's trial defense counsel were ineffective in failing to make obvious, valid objections to evidence of essential elements. We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant's pregnant girlfriend, K.L., reported multiple incidents of domestic violence. Based on these allegations, Appellant's commanding officer issued a Military Protective Order (MPO).[2] The MPO stated that Appellant, "is restrained from initiating any contact or communication with [K.L.]" and "shall remain at all times and places at least 100 feet away from [K.L.] . . . or [K.L.'s] household including, but not limited to, residence and workplaces."[3]

---

[1] 10 U.S.C. § 887b and § 890.

[2] Pros. Ex. 10.

[3] Pros. Ex. 10 at 2.

The ship's legalman chief petty officer (LNC) testified that he reviewed the MPO with Appellant. Appellant's leading chief petty officer was present as well. Both chiefs answered Appellant's questions. It took forty-five minutes to complete the review. Appellant signed the MPO. It was admitted into evidence without objection.[4]

K.L. testified that she and Appellant continued to exchange text messages and see each other while the MPO was in place. She also testified she believed she was "able to contact him . . . but he [was] not allowed to contact me."[5] K.L. further explained how she knew it was Appellant on the phone because she "memorized [Appellant's phone] number and that's the emoji I put on his contact card."[6] The Government admitted the screenshots of the text messages and Appellant's contact card.[7] Defense counsel did not object to the screenshots.[8]

The Government also admitted five voicemails Appellant left for K.L.[9] Defense counsel did not object to the voicemails.[10] K.L. also testified that on multiple occasions she answered phone calls from Appellant.[11] She answered those calls because she did not have the phone numbers he called from saved on her phone.[12]

Additionally, K.L.'s roommate testified that while the MPO was in place, Appellant showed up twice at the residence she shared with K.L.[13] The first time, she saw Appellant through a peephole in the front door and the next month, on 22 December 2022, when Appellant broke a window to enter the

---

[4] R. 724.

[5] R. at 570.

[6] R. at 503.

[7] R. at 502; Pros. Ex. 2.

[8] R. at 502.

[9] R. at 506-07, 534-35; Pros. Ex. 3, 6-9.

[10] R. at 507, 535.

[11] R. at 508, 533.

[12] R. at 508, 533.

[13] R. 789-92.

residence.[14] In the second instance, the roommate testified Appellant borrowed her phone and called K.L.[15]

Appellant was awarded nonjudicial punishment for violating the MPO.[16] Appellant's punishment included sixty days of restriction, with thirty days suspended.[17] The LNC testified that because their ship was a pre-commissioning unit, Sailors would serve restriction on other ships. The restriction orders issued to Appellant stated, "[y]ou understand that you are in a restricted status and you are restricted to the limits of USS JOHN C. STENNIS (CVN 74)."[18]

The LNC did not go over the restriction orders with Appellant but affirmed someone else did. The LNC stated he signed the restriction orders "by direction" and "then [Appellant] and also a witness signed it."[19] The Government admitted the restriction orders into evidence without objection.[20]

The assistant restriction petty officer aboard USS *Stennis* testified that Appellant checked in and was instructed on the restriction process and procedures. On 22 December 2022, the assistant restriction petty officer received a report of a missing restricted Sailor. The restricted Sailors were directed to report to their muster area. All reported except Appellant. The same night, the watch commander reported to the assistant restriction petty officer that Appellant had used a phone designated for restricted personnel and the number last called was K.L.'s phone number.

At trial, the members convicted Appellant of breach of restriction and willfully disobeying a superior commissioned officer. They acquitted Appellant of communicating a threat against K.L. and seven specifications of domestic violence against K.L. The members sentenced Appellant to no punishment.

Additional facts necessary to resolve Appellant's AOEs are included in the discussion below.

---

[14] R. 791-93.

[15] R. at 794.

[16] R. at 891-92.

[17] Pros. Ex. 11.

[18] Pros. Ex. 11.

[19] R. at 731.

[20] R. at 732; Pros. Ex. 11.

## II. DISCUSSION

**A. Appellants convictions are legally sufficient.**

*1. Law*

We review issues of legal sufficiency *de novo*.[21] "The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[22] "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict."[23] The test for legal sufficiency "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[24] "[I]n resolving questions of legal sufficiency, [an appellate court is] bound to draw every reasonable inference from the evidence of record in favor of the prosecution."[25] Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction."[26] "[T]he [G]overnment is free to meet its burden of proof with circumstantial evidence."[27]

*2. A rational trier of fact could find Appellant guilty of breach of restriction.*

To prove Appellant breached his restriction on 22 December 2022, the Government had to prove beyond a reasonable doubt: (1) a certain person ordered Appellant to be restricted to certain limits; (2) said person was authorized to order said restriction; (3) Appellant knew of the restriction and the limits thereof; and, (4) Appellant went beyond the limits of the restriction before being released therefrom by proper authority.

Appellant claims that the breach of restriction was not proven because no evidence was presented to prove the LNC was authorized to sign the restriction paperwork for the commanding officer. Additionally, Appellant argues that the

---

[21] *United States v. Harrington*, 83 M.J. 408, 414 (C.A.A.F. 2023) (citing *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019)).

[22] *United States v. Robinson*, 77 M.J. 294, 297-98 (C.A.A.F. 2018) (citation omitted).

[23] 78 M.J. at 221(citation omitted).

[24] *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[25] *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

[26] *King*, 78 M.J. at 221 (alteration in original) (citation omitted).

[27] *Id.*

Government failed to present the actual limits of restriction, or that Appellant knew of the actual limits of his restriction.[28] We disagree.

The evidence admitted provided the following for proving Appellant breached restriction on 22 December 2022: (1) the restriction orders signed by direction that limited him to limits of the ship; (2) testimony of the LNC stating he signed the restriction orders by direction and with the authorization of the commanding officer; (3) the testimony of the assistant restriction petty officer that he went over the limits of the restriction with Appellant and that Appellant signed the restriction orders; (5) that Appellant did not muster with the other restricted Sailors on 22 December 2022, and, (4) the testimony of K.L.'s roommate who stated Appellant showed up at her and K.L.'s residence on 22 December 2022.

Therefore, viewing the evidence in the light most favorable to the Government, and drawing all reasonable inferences therefrom, a rational trier of fact could have found the elements of breach of restriction as proven beyond a reasonable doubt.[29]

*3. A rational trier of fact could find Appellant guilty of willfully disobeying a superior commissioned officer.*

To prove Appellant willfully disobeyed a superior commissioned officer, the Government had to prove beyond a reasonable doubt that Appellant: (1) received a lawful command from a superior commissioned officer; (2) this officer was the superior commissioned officer of Appellant; (3) Appellant then knew that this officer was the Appellant's superior commissioned officer; and, (4) Appellant willfully disobeyed the lawful command.

The evidence admitted to prove Appellant willfully disobeyed a superior commissioned officer consisted of: (1) the MPO signed by the commanding officer and Appellant; (2) the LNC's testimony that he went over the MPO with Appellant; (3) multiple voicemails Appellant left for K.L. while the MPO was in effect; and (4) K.L.'s roommate's testimony that Appellant came to K.L.'s and her residence twice while the MPO was in place.

Viewing the evidence in the light most favorable to the Government, and drawing all reasonable inferences therefrom, a rational trier of fact could have

---

[28] Appellant's Br. at 11-15.

[29] *See United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

found the elements of willful disobedience of a superior commissioned officer as proven beyond a reasonable doubt.[30]

*4. The MPO was lawful.*

a. Law

This Court reviews the question of whether the military judge correctly determined that an order was lawful under a *de novo* standard of review.[31] Military personnel are obligated to obey lawful orders and regulations.[32] The term "lawful" recognizes the right to challenge the validity of a regulation or order with respect to a superior source of law. "An order is presumed to be lawful, and the accused bears the burden of rebutting the presumption."[33] The defense has the burden to prove illegality unless the order is "palpably illegal on its face."[34] A military judge shall "rule on all . . . questions of law raised during the court-martial."[35] If the legal issue is not raised during the court-martial, an appellate court must first determine the applicable standard of review.

b. Standard of Appellate Review

Whether an issue is waived or forfeited depends on the context. Forfeiture is the failure to make a timely assertion of a right, but waiver "can occur either by operation of law, or by the intentional relinquishment of a known right."[36] This Court will not review waived issues, because, a valid "waiver leaves no error to correct on appeal."[37] In contrast, this Court reviews forfeited issues

---

[30] *See Matias*, 25 M.J. at 363.

[31] *United States v. New,* 55 M.J. 95, 106 (C.A.A.F. 2001).

[32] 10 U.S.C. § § 890, 891, 892.

[33] *United States v. Deisher*, 61 M.J. 313, 317 (C.A.A.F. 2005) (citing *United States v. Hughey*, 46 M.J. 152, 154 (C.A.A.F. 1997); s*ee United States v. Hawkins*, 30 M.J. 682, 684 (A. F. C. M. R. 1990).

[34] *United States v. Austin*, 27 M.J. 227, 232 (C.M.A. 1988) (quoting *United States v. Trani*, 1 C.M.A. 293, 296-97, 3 C.M.R. 27, 30-31 (1952) (internal quotations omitted)); s*ee also United States v. Kapla*, 22 C.M.R. 825, 827 (A.F.B.R. 1956) (stating that to overcome the presumption of lawfulness, an appellant must establish that the order is "palpably illegal on its face").

[35] Rule for Courts-Martial (R.C.M.) 801(a)(4).

[36] *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (cleaned up).

[37] *United States v. Haynes*, 79 M.J. 17, 20 (C.A.A.F. 2019) (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009) (internal quotation marks omitted)).

under a plain error standard.[38] Under the plain error standard, an appellant bears the burden to establish all three conditions for this Court to notice the claimed error. An appellant must establish that: (1) there was error; (2) the error was plain or obvious; and, (3) the error materially prejudiced the appellant's substantial rights.[39] A failure to establish any of these threshold requirements is "fatal to [an appellant's] plain error claim."[40]

d. Analysis

Appellant relies on R.C.M. 801(a)(5) and the military judge's failure to instruct the members before findings that the MPO was lawful by failing to cite, "[a]s a matter of law, the command in this case, as described in the specification, if in fact there was such a command, was a lawful command."[41] Specifically, Appellant argues, citing *Deisher*, that the military judge failed to determine the lawfulness of the order and abrogated the responsibility to determine whether the order was lawful to the members by omitting a sentence from the model instruction.[42] Alternatively, Appellant argues, assuming *arguendo*, that even if the military judge did determine the MPO lawful, she provided no analysis, so no deference is possible or warranted.[43] Finally, Appellant argues that the order was unlawful because he was denied his constitutional due process rights to initiate a parental relationship with his unborn child.[44]

In analyzing Appellant's claim, we must first determine whether he waived his claim when he chose not to challenge the lawfulness of the order, or whether he forfeited it. While the text of the applicable rules for courts-martial are somewhat unclear, based on caselaw, we believe that Appellant waived his claim.[45]

---

[38] *See United States v. Maynard*, 66 M.J. 242, 244 (C.A.A.F. 2008).

[39] *United States v. Knapp*, 73 M.J. 33, 36 (C.A.A.F. 2014) (citation omitted).

[40] *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

[41] U.S. DEP'T OF THE ARMY, PAM. 27-9, MILITARY JUDGES' BENCHBOOK, para. 3a-14-1 (Feb. 29, 2020).

[42] Appellant's Br. at 23 (citing *United States v. Deisher,* 61 M.J. 313, 318 (C.A.A.F. 2005).

[43] *Id.* at 24.

[44] *Id.* at 24-25.

[45] R.C.M. 905(e) ("Failure such other motions, requests, defenses, or objections shall constitute forfeiture, absent affirmative waiver."); R.C.M. 801(g) ("Failure by a party to raise defenses or objections . . . shall constitute forfeiture unless the applicable rules provides that failure to raise the defense or objection constitutes waiver.").

When the Government moved to admit the MPO, Appellant's defense counsel stated "No objection, Your Honor."[46] By his affirmative statement, Appellant waived his claim to challenge the lawfulness of the MPO.[47] Accordingly, there is no error for us to review.[48]

## B. Appellant's trial defense counsel were not ineffective by failing to file several motions or make objections.

Appellant asserts that his defense counsel were ineffective for three reasons: (1) defense counsel failed to object to the admission of the text messages; (2) defense counsel failed to object to secondary evidence and hearsay on the MPO; and, (3) defense counsel failed to file several appropriate motions (i.e., failed to move for a finding of not guilty for willfully disobeying superior commissioned officer, failed to move for a complete record of the text messages, unnecessarily introduced Appellant's prior NJP and failed to move for an instruction that NJP is not proof of misconduct and members must make their

---

[46] R. 723.

[47] *See Campos*, 67 M.J. at 332-33 (finding waiver when Campos stated "no objection" to the evidence in question); *United States v. Ahern*, 76 M.J. 194, 198 (C.A.A.F. 2017) (concluding that the Army Court of Criminal Appeals erred in applying forfeiture within the context of admission of a pretext phone call when civilian defense counsel stated "No objections" to its admission); *Haynes*, 79 M.J. at 19 (applying waiver to an appellate claim of *Pierce* credit when Haynes failed to press his claim at trial).

[48] Assuming *arguendo* that "no objection" by defense counsel in this context is insufficient to constitute waiver, Appellant forfeited his claim because he cannot establish plain error. Against the backdrop that an order from an known superior officer has a long-standing presumption of lawfulness, the MPO was signed by the commanding officer based on allegations of Appellant's "dating violence" against K.L. See Pros. Ex. 10. Department of Defense policy requires commanders to issue and enforce appropriate MPOs to protect individuals from domestic abuse. Dep't of Def. Instr. 6400.06, *DoD Coordinated Community Response to Domestic Abuse Involving DoD Military and Certain Affiliated Personnel* (Dec. 15, 2021), paragraphs 3.5.c(5) & (6). Here, the MPO served a valid military purpose to protect K.L. and to maintain good order and discipline. *Id*. at para. 3.5.d(2). Appellant claims that the MPO is unlawful because it unconstitutionally interfered with his parental rights of due process. We find this claim to be without merit. *See Matias*, 25 M.J. at 363. In any event, while the MPO had no expiration date, it did provide for exceptions with advance notice to the commanding officer. Accordingly, and assuming *arguendo* that the proper analysis is plain error review, Appellant forfeited his claim.

own findings, and failed to move for instruction on ignorance or mistake of fact).[49]

*1. Law*

We review *de novo* allegations of ineffective assistance of counsel.[50] To establish that ineffective assistance of counsel occurred, an appellant must prove both that the defense counsel's performance was deficient and that the deficiency caused prejudice.[51] With respect to the first prong of this test, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance"; and "[a]s to the second prong, a challenger must demonstrate a reasonable probability that, but for counsel's [deficient performance] the result of the proceeding would have been different."[52]

With respect to the first prong, counsel are presumed to be competent and our inquiry into a attorney's representation is "highly deferential" to that attorney.[53] An appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation.[54] We will not second-guess strategic or tactical decisions made by trial defense counsel unless an appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms.[55]

Our superior Court has consistently held that, "[w]hen a claim of ineffective assistance of counsel is premised on counsel's failure to make a motion, an appellant must show that there is a reasonable probability that such a motion would have been meritorious."[56] The two-prong approach laid out in *United States v. Strickland* is not a sequential test. We need not always determine "whether counsel's performance was deficient before examining the prejudice

---

[49] Appellant's Brief at 26-40.

[50] *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009).

[51] *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 698 (1984).

[52] *Id.* (quoting *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (quoting *Strickland*, 466 U.S. at 689, 694) (internal quotation marks omitted)).

[53] *Strickland*, 466 U.S. at 689.

[54] *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000).

[55] *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009).

[56] *United States v. Metz,* 84 M.J. 421, 428 (C.A.A.F. 2024) (quoting *United States v. Jameson*, 65 M.J. 160, 163-64 (C.A.A.F. 2007)).

suffered by the [appellant] as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."[57]

*2. Failure to object to the screenshots of text messages did not prejudice Appellant.*

The Government introduced other violations of the MPO unrelated to the screenshots of text messages. Specifically, the Government introduced testimony of K.L.'s roommate that Appellant came to K.L.'s residence twice while the MPO was in place. Thus, even without the text messages, the Government introduced sufficient evidence that Appellant was guilty of willful disobedience of a superior officer. Here we dispose of this claim for lack of prejudice.

*3. Failure to object to the restriction orders signed by direction and hearsay statements of the LNC did not make Trial Defense Counsel ineffective.*

Appellant's argument that the Government had to introduce the actual "by direction" designation letter fails since official documents are entitled to the presumption of regularity.[58] Also, even if the military judge had sustained an objection for hearsay when the LNC testified, the punitive restriction orders would still have been valid and admissible under the presumption of regularity. Defense counsel's objection would not have been meritorious and so the failure to object did not prejudice Appellant.

*4. Failure to file motions did not make trial defense counsel ineffective.*

a. Trial defense counsel were not ineffective for not moving for a finding of not guilty with respect to willfully disobeying a lawful order.

Appellant relies on the difference in language between the specification and the MPO with regard to method and scope of communication, but fails to acknowledge the additional evidence provided to the members of violations of the MPO. Specifically, the members had additional evidence apart from the text messages to prove the violation of the order because K.L.'s roommate testified to Appellant coming within 100 feet of K.L.'s residence on at least two occasions.

---

[57] *Strickland,* 466 U.S. at 668-89.

[58] *United States v. Edwards,* 46 M.J. 41, 45 (C.A.A.F. 1997) (citing *United States v. Moschella,* 20 C.M.A 543, 43 C. M. R. 383 (1971)).

b. Trial defense counsel were not ineffective for failing to move for a complete record of the text messages.

Defense counsel effectively used the text messages as part of a strategy to focus on the "heart of the case, the alleged domestic violence . . . And along the way he [Appellant] did make mistakes, but the evidence will finally clear his name of the domestic allegations against him."[59] Specifically, defense counsel reminded the members in closing of his effective cross-examination of K.L.'s continued contact with Appellant, "I love you beyond words."[60] Indeed, Appellant was acquitted of the most serious charges, communicating a threat and the seven specifications of domestic violence.

c. Trial defense counsel were not ineffective by referencing Appellant's prior nonjudicial punishment and by not requesting a limiting instruction.

The Government introduced evidence of Appellant's punitive restriction orders, which stated that it was awarded based on his prior nonjudicial punishment (NJP).[61] Defense counsel clarified during cross-examination that the NJP was for a violation of the MPO.[62] Appellant was not prejudiced by the clarification based on the more serious allegations Appellant was facing. The restriction orders in evidence already clearly established that Appellant had been restricted based on an earlier imposition of NJP. The clarification was minor within the context of defense counsel's strategic choice to attack the credibility of K.L. that culminated in Appellant's acquittal of the most serious charges. There is no evidence defense counsel's reference to Appellant's prior NJP led the members to conclude that the NJP provided the evidence to establish Appellant's guilt for disobeying a lawful order.[63] The military judge correctly instructed the members regarding their duty to convict Appellant only if they were convinced that the Government had satisfied each and every element of disobedience of a lawful order.[64] Members are presumed to follow the

---

[59] R. at 454, 457.

[60] R. at 969.

[61] Pros. Ex. 11.

[62] R. 737.

[63] Absent evidence, Appellant's argument is based on speculation. It is just as potentially likely that defense counsel's reference to the fact that Appellant had already received NJP for violating the MPO was a factor for the members in imposing the sentence of no punishment.

[64] R. 923, 938-39.

military judge's instructions "absent evidence to the contrary."[65] Additionally, the Government's case for Appellant's willful disobedience of his commanding officer was strong. Based on the strength of the Government's case, there is no reasonable probability, let alone a "substantial" one, that defense counsel's clarification of Appellant's prior NJP would have led to "a different result."[66]

      d. Trial defense counsel were not ineffective for failing to move for an instruction on ignorance or mistake of fact.

Appellant mischaracterizes why the meeting to go over the MPO took forty-five minutes. Appellant was not confused about the specific restrictions of the MPO. According to the LNC, Appellant was hesitant and agitated. "[Appellant] had a lot of questions about why the Navy could do this to him, keep him away from his family."[67] Mistake of fact was not raised by the record.[68]

Further fact-finding is not required. Specifically, we conclude that the "motion and the files and records of the case . . . conclusively show that Appellant is entitled to no relief."[69] Specifically, we find he has failed to meet his burden under *Strickland* and its progeny.

---

[65] *United States v. Quezada*, 82 M.J. 54, 59 (C.A.A.F. 2021)

[66] *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2021) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 189 (2010)).

[67] R. at 724.

[68] *See Matias*, 25 M.J. at 363.

[69] *United States v. Ginn*, 47 M.J. 236, 244 (C.A.A.F. 1997).

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[70]

However, we note that the Entry of Judgment [EOJ] does not accurately reflect the disposition of the charges. Additionally, the EOJ incorrectly included charges not referred. Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[71] In accordance with Rule for Courts-Martial 1111(c)(2), we modify the EOJ and direct that it be included in the record.

The findings and sentence are **AFFIRMED**.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[70] Articles 59 & 66, UCMJ.

[71] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202300243 |
| **v.** | **ENTRY OF JUDGMENT** |
| **Ramaje T. A. PARKS**<br>**Aviation Ordnanceman Airman**<br>**Apprentice (E-2)**<br>**U.S. Navy** | *As Modified on Appeal* |
| *Accused* | **27 June 2025** |

On 8 July 2023, the Accused was tried at Naval Air Station Norfolk, Virginia, by a general court-martial, consisting of officer and enlisted members. Military Judge D. Monique Brown presided.

## FINDINGS

The following are the Accused's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:  Violation of Article 87b, Uniform Code of Military Justice, 10 U.S.C. § 887b.**

>*Plea:* Not Guilty.
>*Finding:* Guilty.

**Specification:  (Breach of restriction – on or about 22 December 2022):**

>*Plea:* Not Guilty.
>*Finding:* Guilty.

**Charge II:  Violation of Article 90, Uniform Code of Military Justice, 10 U.S.C. § 890.**

>*Plea:* Not Guilty.
>*Finding:* Guilty.

**Specification:  (Willfully disobeying superior commissioned officer – on or about 14 October 2022 to on or about 27 December 2022):**

> *Plea:* Not Guilty.
>
> *Finding:* Guilty.

**Charge III:   Violation of Article 115, Uniform Code of Military Justice, 10 U.S.C. § 915.**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification:  (Communicating Threats – wrongfully communicate threat on or about 22 November 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Charge IV:   Violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b.**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification 1:  (Domestic Violence – Strangulation – between about 1 June 2022 and about 30 June 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification 2:  (Domestic Violence – Strangulation – on or about 19 August 2022):**

> *Plea: Not Guilty.*
> *Finding:* Not Guilty.

**Specification 3:  (Domestic Violence – Violent Offense – on or about 14 July 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification 4:  (Domestic Violence – Violent Offense – on or about 30 September 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification 5: (Domestic Violence – Violent Offense – on or about 8 October 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification 6: (Domestic Violence – Violent Offense – on or about 8 October 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

**Specification 7: (Domestic Violence – Violent Offense – on or about 13 October 2022):**

> *Plea:* Not Guilty.
> *Finding:* Not Guilty.

## SENTENCE

On 8 July 2023, members sentenced the Accused to the following:

**No punishment.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court